UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) No. 3:15-cr-00033 |
| v. | ) Judge Aleta A. Trauger |
| | ) |
| SOUTHERN GREASE COMPANY | ) |

PLEA AGREEMENT

The United States of America, through David Rivera, United States Attorney for the Middle District of Tennessee, and Assistant United States Attorney William F. Abely, and defendant, Southern Grease Company ("Southern Grease"), through defendant's counsel, James Todd, pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, have entered into an agreement, the terms and conditions of which are as follows:

Charges in This Case

1. Defendant acknowledges that it has been charged in the information in this case with violating the Clean Water Act, in violation of Title 33, United States Code, Section 1319(C)(2)(a), with conspiring to violate the Clean Water Act, in violation of Title 18, United States Code, Section 371, with making a false statement, in violation of Title 18, United States Code, Section 1001, and with mail fraud, in violation of Title 18, United States Code, Section 1341.

2. Defendant, through its President, has read the charges against it contained in the information, and those charges have been fully explained by its attorney. Defendant fully understands the nature and elements of the crimes with which it has been charged.

## Charges to Which Defendant is Pleading Guilty

3. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Counts 1, 2, 3, and 5 of the information, charging a violation of the Clean Water Act, conspiring to violate the Clean Water Act, making a false statement, and mail fraud.

## Penalties

4. The parties understand and agree that the offenses of conspiring to violate the Clean Water Act, making a false statement each carries the following maximum penalties: five years of imprisonment, a fine of $250,000, a term of probation of five years, and a special assessment of $100. The parties further understand and agree that the offense of violating the Clean Water Act carries the following maximum penalties: three years of imprisonment, a fine of $50,000 per day of violation, a term of probation of five years, and a special assessment of $100. The parties further understand and agree that the offense of mail fraud carries the following maximum penalties: twenty years of imprisonment, a fine of $250,000, a term of probation of five years, and a special assessment of $100.

5. 18 U.S.C. § 981(a)(1)(c) and 28 U.S.C. § 2461 provide for forfeiture of any property, real or personal, which constitutes or is derived from proceeds traceable to the scheme or artifice set forth in a mail fraud violation.

6. Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

## Acknowledgements and Waivers Regarding Plea of Guilty

### Nature of Plea Agreement

7. This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 3:15-cr-00033.

8. Defendant understands that by pleading guilty it surrenders certain trial rights, including the following:

   a. If defendant persisted in a plea of not guilty to the charges against it, it would have the right to a public and speedy trial. Defendant has a right to a jury trial, and the trial would be by a judge rather than a jury only if defendant, the government, and the Court all agreed to have no jury.

   b. If the trial were a jury trial, the jury would be composed of twelve laypersons selected at random. Defendant and its attorney would have a say in who the jurors would be by removing prospective jurors for cause, or without cause by exercising so-called peremptory challenges. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that defendant is presumed innocent; that the government bears the burden of proving defendant guilty of the charges beyond a reasonable doubt; and that it must consider each count of the information against defendant separately.

   c. If the trial were held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded of defendant's guilty beyond a reasonable doubt.

3

d. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and its attorney would be able to cross-examine them. In turn, defendant could present witnesses and other evidence on its own behalf. If the witnesses for defendant would not appear voluntarily, it could require their attendance through the subpoena power of the Court.

9. Defendant understands that by pleading guilty it is waiving all of the trial rights set forth in the prior paragraph. Defendant's attorney has explained those rights, and the consequences of its waiver of those rights.

Factual Basis

10. Defendant will plead guilty because it is in fact guilty of charges contained in Counts 1, 2, 3, and 5 of the information. In pleading guilty, defendant admits the following facts and that those facts establish its guilt beyond a reasonable doubt:

a. George Butterworth was President and an owner of Southern Grease Company ("Southern Grease"), a for-profit corporation based in Dickson, Tennessee.

b. Restaurants and other food service establishments generate waste grease during the food cooking process or during cleaning or sanitizing their facilities. Restaurants generally process their waste grease through an outside tank known as a grease interceptor. Waste grease is also known as brown grease or as FOG (Fats, Oils and Grease) waste. Waste grease has no value, and restaurants are required to dispose of the waste grease that builds up in their grease interceptors. Waste grease that is discharged into a public sewer system can cause considerable damage to that system,

4

including by blocking pipes, by obstructing the operation of pump stations, and by causing sewer overflows.

c. Southern Grease performed services for restaurants and other food service establishments in Tennessee and Kentucky, including the collection of waste grease from these customers. Southern Grease contracted with its customers and certain municipal governments to dispose of waste grease at proper disposal facilities. Southern Grease collected waste grease from customers in municipalities including Clarksville, Dickson, Franklin, Brentwood, and Spring Hill, Tennessee.

d. Beginning in approximately September 2011, and extending through December 2013, Southern Grease, at times unspecified, failed to dispose of waste grease it collected at legitimate disposal facilities, and instead disposed of waste grease at discharge points that had not been designated or approved by any governmental authority. On occasions, Southern Grease illegally discharged waste grease into grease interceptors that were connected to the municipal sewer systems (also known as publicly owned treatment works, or POTW, facilities). George Butterworth was aware of and involved in the illegal dumping of grease into these grease interceptors.

e. George Butterworth and Southern Grease each conspired with other employees of Southern Grease to discharge waste grease into grease interceptors that were connected to the municipal sewer systems and that were not approved or designated discharge points, in violation of various pretreatment standards and regulations.

f. The illegal dumping of grease by Southern Grease caused damage to at least one municipal sewer system, including by blocking pipes and by clogging the operation of a pump station. For example, on or around November 6, 2013 and

5

December 4, 2013, an employee of Southern Grease, acting within the scope of his employment, knowingly and illegally discharged waste grease into a restaurant grease interceptor in Clarksville, Tennessee and thus into the Clarksville sewer system, which resulted in the obstruction of pipes within the Clarksville sewer system and damage to a Clarksville pumping station. On both of these occasions, as well as other occasions in 2013, the illegal discharge of waste grease by Southern Grease resulted in the need for non-routine cleaning and repairs to the Clarksville pumping station, which caused its operation to be interrupted. The discharge of waste grease into this grease interceptor violated various pretreatment standards and regulations, including 40 C.F.R. § 403.5(b)(8), which prohibits the discharge of any trucked or hauled pollutants into a sewage system except at approved discharge points.

  g. Southern Grease charged its customers for the collection and proper disposal of waste grease, and sent invoices to its customers via U.S. Mail. For example, on or about November 10, 2013, Southern Grease mailed an invoice to a customer in Clarksville, Tennessee that reflected charges for waste grease disposal services, despite the fact that Southern Grease had in fact illegally discharged waste grease into the grease interceptor belonging to this customer on November 6, 2013.

  h. Southern Grease charged its customers for complete pump-outs of their grease interceptors – *i.e.*, for the removal and proper disposal of all waste grease within the interceptors at the time of collection. However, Southern Grease often conducted mere partial pump-outs of customers' grease interceptors – *i.e.*, the removal of only a portion of the waste grease within those grease interceptors.

6

i. From September 2011 through December 2013, Southern Grease obtained more than $125,000 in fees for the collection of waste grease from its customers.

j. On December 4, 2014, federal agents seized approximately $392,000 from bank accounts associated with Southern Grease.

k. In order to obtain and maintain classification as an approved grease waste hauler, Southern Grease misrepresented to municipal governments that it disposed of waste grease it collected at legitimate disposal facilities. For example, on or about December 17, 2013, Southern Grease falsely reported during an audit commissioned by the City of Clarksville that it had been disposing of its waste grease at a proper facility in Birmingham, Alabama.

l. On June 25, 2014, during an interview with agents with the Environmental Protection Agency, George Butterworth, acting within the scope of his employment with Southern Grease, falsely stated that Southern Grease disposed of its waste grease at a proper facility in Birmingham, Alabama, although George Butterworth at that time knew that Southern Grease had been disposing of waste by illegally discharging it into grease interceptors.

This statement of facts is provided to assist the Court in determining whether a factual basis exists for defendant's plea of guilty. The statement of facts does not contain each and every fact known to defendant and to the United States concerning defendant's and/or others' involvement in the offense conduct and other matters.

Sentencing Guidelines Calculations

11. The parties understand that the Court will take account of the United States Sentencing Guidelines (hereinafter "U.S.S.G."), together with the other sentencing factors set forth

7

at 18 U.S.C. § 3553(a), and will consider the U.S.S.G. advisory sentencing range in imposing defendant's sentence. The parties agree that the U.S.S.G. to be considered in this case are those effective November 1, 2014.

12. For purposes of determining the U.S.S.G. advisory sentencing range, the United States and defendant agree, pursuant to Rule 11(c)(1)(C), the following:

    a. Offense Level Calculations.

        i. The base offense level for the offense is 7, pursuant to U.S.S.G. § 2B1.1.

        ii. The parties agree that the offense level should be increased by 10 levels pursuant to U.S.S.G. § 2B1.1(b)(1) because the offense involved a loss of more than $120,000.

        iii. The parties agree that the offense level should be increased by 4 levels pursuant to U.S.S.G. § 2B1.1(b)(2)(B) because the offense involved 50 or more victims.

        iv. Assuming defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the government, a 2-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(a). Furthermore, assuming defendant accepts responsibility as described in the previous sentence, the United States will move for an additional one-level reduction pursuant to U.S.S.G § 3E1.1(b), because defendant will have given timely notice of its intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently.

8

Case 3:15-cr-00033   Document 38   Filed 06/09/15   Page 8 of 17 PageID #: 104

v. The parties agree to recommend that no additional upward or downward adjustments, or U.S.S.G.-based departures, are appropriate.

b. Recommended Offense Level: Therefore, the parties agree to recommend to the Court a final offense level of **18** (the "Recommended Offense Level"). Defendant understands that the offense level as ultimately determined by the Court (the "court-determined offense level)" may be different from the Recommended Offense Level. Defendant likewise understands that the guidelines range as ultimately determined by the Court (the "court-determined guidelines range") may be based on an offense level different from the Recommended Offense Level.

c. Pursuant to U.S.S.G. § 8C2.4, the parties agree to recommend that the base fine, is $350,000. Pursuant to U.S.S.G. § 8C2.5, the parties agree to recommend that the culpability score is 4. Pursuant to U.S.S.G. §§ 8C2.6 and U.S.S.G. § 8C2.7, the parties agree to recommend that the guideline fine range is $280,000 - $560,000.

## Agreements Relating to Sentencing

13. This Plea Agreement is governed, in part, by Federal Rule of Criminal Procedure 11(c)(1)(C). That is, the parties have agreed that the sentence imposed by the Court shall include a fine of $280,000.00, and shall not include a term of probation.

14. The parties agree that the $280,000 fine will be withdrawn from the Subject Property (defined below in the forfeiture section of the plea agreement), and the Court will direct the United States Marshals Service to return the withdrawn $280,000 to the owner(s) Southern Grease and/or George Butterworth and Sue Butterworth via the United States Clerk of Court for payment of the

9

Case 3:15-cr-00033 Document 38 Filed 06/09/15 Page 9 of 17 PageID #: 105

$280,000 fine which will be assessed against Southern Grease. The $280,000 will be returned from the following assets:

    a.    $120,803.83 (seized from Traditions First Bank Account # ending in *4194)

    b.    $154,689.65 (seized from First Federal Bank of Dickson Account *3529)

    c.    $2,027.53 (seized from First Federal Bank of Dickson, Account # ending in *8701).

    d.    $2,478.99 (from $114,483.56 seized from the account of George Butterworth and Sue Butterworth located at the First Federal Bank of Dickson, Account # ending in *4893).

15. If the Court accepts and imposes the agreed fine set forth herein, defendant may not withdraw this plea as a matter of right under Federal Rule of Criminal Procedure 11(d). If, however, the Court refuses to impose the agreed fine, thereby rejecting the Plea Agreement, or otherwise refuses to accept defendant's plea of guilty, either party shall have the right to withdraw from this Plea Agreement.

16. Regarding restitution, the parties acknowledge that, pursuant to Title 18, United States Code, Section 3663A, the Court must order defendant to make restitution to the victims of this offense. The parties agree that the victims of this offense include the City of Clarksville, Tennessee and Dickson County, Tennessee.

17. Defendant agrees to pay the special assessment of $400 at or before the time of sentencing to the Clerk of the U.S. District Court.

10

Case 3:15-cr-00033 Document 38 Filed 06/09/15 Page 10 of 17 PageID #: 106

## Forfeiture

18.   Defendant acknowledges that the following assets were seized on December 4, 2014:

    a.   $120,803.83 (from Traditions First Bank Account # ending in *4194)

    b.   $154,689.65   (from First Federal Bank of Dickson Account *3529)

    c.   $2,027.53 (from First Federal Bank of Dickson, Account # ending in *8701).

    d.   $114,483.56 from the account of George Butterworth and Sue Butterworth located at the First Federal Bank of Dickson, Account # ending in *4893).

collectively referred to as the "Subject Property."

19.   The parties recognize that the Subject Property was properly seized as forfeiture. However, the parties have agreed, as set forth above, that $280,000 of the Subject Property is to be returned to the Defendant and/or George Butterworth and Sue Butterworth via the Clerk of Court to be used for the payment of fines in the case. The $280,00.00 will be returned as follows:

    a.   $120,803.83 (seized from Traditions First Bank Account # ending in *4194)

    b.   $154,689.65   (seized from First Federal Bank of Dickson Account *3529)

    c.   $2,027.53 (seized from First Federal Bank of Dickson, Account # ending in *8701).

    d.   $2,478.99 (from $114,483.56 seized from the account of George Butterworth and Sue Butterworth located at the First Federal Bank of Dickson, Account # ending in *4893).

20.   The Information charges that defendant is liable to the United States for any property which constitutes or is derived from proceeds traceable to the mail fraud scheme. By

11

entry of a guilty plea to Count Five of the indictment, Defendant agrees to forfeit the amount of $113,500.

21. Southern Grease agrees to a preliminary order of forfeiture against Southern Grease in the amount of $113,500.00, because said amount represents property which constitutes or is derived from proceeds traceable to the mail fraud scheme, to include forfeiture of the following specific property:

   a. $112,004.57 (the amount remaining in the First Federal of Dickson Account # ending in *4893 after the return of $2,478.99 for the payment of the criminal fine referred to herein).

   b. $1,495.43 (to be submitted by Defendant to the United States Marshals Service in the form of a certified check payable to the United States Marshals Service prior to sentencing in this matter).

22. Defendant will cooperate and assist the United States in its efforts to recover the proceeds of the crime.

23. Defendant understands that forfeiture of this property shall not be treated as satisfaction of any fine, cost of imprisonment, or any other penalty the Court may impose upon defendant in addition to the forfeiture judgment. However, the parties agree that any restitution ordered by the Court against Southern Grease and George Butterworth shall be satisfied by remission of forfeited funds to the victims in the case, as set forth below.

24. Defendant asserts that, other than George Butterworth and Sue Butterworth, Defendant is unaware of any other third party who has an ownership interest in, or claim to, the

Subject Property. George Butterworth and Sue Butterworth have agreed, via a separate written agreement, to waive their interest in the Subject Property.

25. Southern Grease, by and through its President George Butterworth, will cooperate with the United States during the ancillary stages of any forfeiture proceedings to defeat the claim of a third party in the event a third party files a claim.

26. Defendant acknowledges that its actions caused damage to the POTW owned by the City of Clarksville, Tennessee and the County of Dickson, Tennessee, and as such that the City of Clarksville and the County of Dickson are victims in this case and may file a petition for remission with the Attorney General of the United States for payment of damages incurred.

27. Defendant also agrees to waive any and all constitutional and statutory challenges to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. Defendant agrees to take steps as required by the United States to pass clear title to any forfeitable assets to the United States.

<u>Presentence Investigation Report/Post-Sentence Supervision</u>

28. Defendant understands that the United States Attorney's Office, in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing, shall fully apprise the District Court and the United States Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against it, as well as any related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing.

29. Defendant agrees to execute truthfully and completely a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the United States Probation Office, and the United States Attorney's Office regarding all details of its

financial circumstances, including its recent income tax returns as specified by the Probation Officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1 and enhancement of its sentence for obstruction of justice under U.S.S.G. § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001, or as a contempt of the Court.

30. This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Plea Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Plea Agreement are limited to the United States Attorney's Office for the Middle District of Tennessee and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Plea Agreement.

## Entry of Guilty Plea

31. The parties jointly request that the Court accept the defendant's plea of guilty as set forth in this agreement and enter an order reflecting the acceptance of the plea while reserving acceptance of this plea agreement until receipt of the pre-sentence report and sentencing.

## Waiver of Appellate Rights

32. Regarding the issue of guilt, defendant hereby waives all (i) rights to appeal any issue bearing on the determination of whether it is guilty of the crimes to which it is agreeing to plead guilty; and (ii) trial rights that might have been available if it exercised its right to go to trial. Regarding sentencing, Defendant is aware that 18 U.S.C. § 3742 generally affords a defendant the

14

right to appeal the sentence imposed. Acknowledging this, defendant knowingly waives the right to appeal any sentence within or below the guideline range associated with the Recommended Offense Level when combined with defendant's criminal history category as determined by the Court. Defendant also knowingly waives the right to challenge the sentence imposed in any collateral attack, including, but not limited to, a motion brought pursuant to 28 U.S.C. § 2255 and/or § 2241, and/or 18 U.S.C. § 3582(c). However, no waiver of the right to appeal, or to challenge the adjudication of guilt or the sentence imposed in any collateral attack, shall apply to a claim of involuntariness, prosecutorial misconduct, or ineffective assistance of counsel. Likewise, the government waives the right to appeal any sentence: (i) within or above the guideline range associated with the Recommended Offense Level when combined with defendant's criminal history category; or (ii) below such guideline range if the government has moved for a downward departure pursuant to U.S.S.G. §5K1.1.

### Other Terms

33. Should defendant engage in additional criminal activity after it has pled guilty but prior to sentencing, defendant shall be considered to have breached this Plea Agreement, and the government at its option may void this Plea Agreement.

### Conclusion

34. Defendant understands that the information and this Plea Agreement have been or will be filed with the Court, will become matters of public record, and may be disclosed to any person.

35. Defendant understands that its compliance with each part of this Plea Agreement extends until such time as it is sentenced, and failure to abide by any term of the Plea Agreement is

a violation of the Plea Agreement. Defendant further understands that in the event it violates this Plea Agreement, the government, at its option, may move to vacate the Plea Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Plea Agreement, or may require defendant's specific performance of this Plea Agreement.

36. Defendant and its attorney acknowledge that no threats have been made to cause defendant to plead guilty.

37. No promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement, and none will be entered into unless memorialized in writing and signed by all of the parties listed below.

38. Defendant's Signature: I am President of Southern Grease Company and am authorized to enter into this Plea Agreement on behalf of Southern Grease Company. On behalf of Southern Grease Company, I hereby agree that Southern Grease has consulted with its attorney and fully understands all its rights with respect to the pending information. Further, agree that Southern Grease fully understands all rights with respect to the provisions of the Sentencing Guidelines that may apply in its case. I have read this Plea Agreement and carefully reviewed every part of it with the attorney for Southern Grease. I hereby agree that Southern Grease understands this Plea Agreement and voluntarily agrees to it.

Date: 6/9/15

George Butterworth
President, Southern Grease Company

39. Defense Counsel Signature: I am counsel for defendant Southern Grease in this case. I have fully explained to the President of Southern Grease its rights with respect to the pending information. Further, I have reviewed the provisions of the Sentencing Guidelines and Policy Statements, and I have fully explained to the President of Southern Grease the provisions of those guidelines that may apply in this case. I have reviewed carefully every part of this Plea Agreement with the President of Southern Grease. To my knowledge, the decision by Southern Grease to enter into this Plea Agreement is an informed and voluntary one.

Date: 6/9/15

James Todd
Attorney for Defendant


Respectfully submitted,

DAVID RIVERA
United States Attorney

By: _____
William F. Abely
Assistant U.S. Attorney

_____
John K. Webb
Deputy Criminal Chief

17